**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

IN RE: REDRIDGE DILIGENCE SERVICES, LLC d/b/a IMA DILIGENCE SERVICES AND PLAZA SERVICES, LLC DATA BREACH LITIGATION

**This Document Relates To: All Actions**

Master File No. 1:26-cv-02192

**DEFENDANT REDRIDGE DILIGENCE SERVICES, LLC d/b/a IMA DILIGENCE SERVICES' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); OR, IN THE ALTERNATIVE, MOTION TO STRIKE THE CLASS ALLEGATIONS PURSUANT TO FED. R. CIV. P. 12(f) AND 23; AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF ALLEGED FACTS .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 3

A. Plaintiffs lack Article III standing, and the Consolidated Complaint must be dismissed under Rule 12(b)(1) .......... 3

1. Plaintiffs fail to plead an injury in fact. .......... 4

2. Plaintiffs fail to establish traceability. .......... 8

3. Plaintiffs fail to establish redressability. .......... 9

B. Each count of the Cons. Compl. fails to state a claim under Rule 12(b)(6). .......... 10

1. Count I (negligence) fails for want of cognizable damages. .......... 10

(a) There is no common-law duty for Defendant to safeguard personal information. 10

(b) Plaintiffs fail to plead proximate cause. .......... 11

(c) Independently, Plaintiffs plead no cognizable injury. .......... 11

2. Count II (negligence per se) fails because the FTC Act supplies no standard of strict liability. .......... 12

3. Economic loss doctrine bars recovery of any tort damages. .......... 12

4. Count III (unjust enrichment) fails because Defendant retained no benefit unjustly. 13

C. In the alternative, the nationwide class allegations should be stricken under Rule 12(f) and Rule 23. .......... 14

V. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555 (N.D. Ill. 2021) ........................14

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009) ....................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................3

*Attias v. CareFirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017) ..............................................................9

*Baysal v. Midvale Indem. Co.*, 78 F.4th 976 (7th Cir. 2023) ..............................................6, 7, 8, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................3

*Bernardino v. HAH Grp. Holding, LLC*, No. 1:24-CV-7595, 2026 WL 1398722 (N.D. Ill. May 19, 2026) ..........................................................................................................................7

*Berry v. City of Chicago*, 181 N.E.3d 679 (Ill. 2020) ...................................................................12

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..................................................................7, 9

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803 (7th Cir. 2018) ..............10, 13, 14

*Cooper v. Bonobos, Inc.*, No. 21-CV-854, 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ................6

*Dinerstein v. Google, LLC*, 73 F.4th 502 (7th Cir. 2023) .........................................4, 5, 6, 7, 8, 10

*Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ......................................................................12, 13

*Fullerton v. Corelle Brands, LLC*, No. 18-CV-4152, 2019 WL 4750039 (N.D. Ill. Sept. 30, 2019) ..........................................................................................................................14

*Giasson v. MRA-The Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913 (E.D. Wis. 2025) ...........................9

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) ................................................14

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305 (S.D. Ill. 2007) .............15

*In re Lurie Children's Hosp. Data Sec. Litig.*, 2025 WL 2754760 (N.D. Ill. Sept. 27, 2025)……. ..........................................................................................................................5, 7, 8, 11

*In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518 (N.D. Ill. 2011) ................................13

*Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064 (C.D. Ill. 2016).............................7

*Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011).................................15

*Kirkland v. Cunningham*, No. 25-CV-10730, 2026 WL 2906409 (N.D. Ill. Sept. 28, 2026) .....6, 8

*Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841 (N.D. Ill. 2020) ....................................4, 5, 6, 7, 9

*Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) 4, 5

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...................................................................3

*M.C. v. E. Side Health Dist.*, No. 3:24-CV-01336-NJR, 2025 WL 435992 (S.D. Ill. Feb. 7, 2025) ...........................................................................................................................12

*McGlenn v. Driveline Retail Merch., Inc.*, No. 18-CV-2097, 2021 WL 4301476 (C.D. Ill. Sept. 21, 2021) ..........................................................................................................10, 11

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ................................15

*Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982).........................12, 13

*Olson v. Ferrara Candy Co.*, 2025 IL App (1st) 241126 .....................................................11, 12

*Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749 (C.D. Ill. 2020)......................................................13

*Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493 (7th Cir. 2024).......................................8

*Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634 (7th Cir. 2023).......................................................6

*Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015).......................................4, 5

*Siegel v. Shell Oil Co.*, 256 F.R.D. 580 (N.D. Ill. 2008) ...........................................................14

*Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015).........................................................................6

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ..............................................................................3

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ..........................................2, 3, 4, 7, 9, 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...............................................................15

**Statutes**

15 U.S.C. § 45 (FTC Act § 5) ............................................12

815 ILCS 530/45(a) (Illinois Personal Information Protection Act) ..........................10, 11

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................1, 3, 15

Fed. R. Civ. P. 12(b)(6)............................................1, 2, 3, 10, 15

Fed. R. Civ. P. 12(f) ............................................1, 14, 15

Fed. R. Civ. P. 23 ............................................1, 14, 15

Fed. R. Civ. P. 23(b)(2)............................................15

Fed. R. Civ. P. 23(b)(3)............................................14

Fed. R. Civ. P. 23(c)(1)(A) ............................................14

Fed. R. Civ. P. 23(c)(4)............................................15

Fed. R. Civ. P. 23(d)(1)(D) ............................................14

Defendant RedRidge Diligence Services, LLC d/b/a IMA Diligence Services ("Defendant" or "RedRidge"), by and through its counsel, respectfully moves this Court under Federal Rule of Civil Procedure 12(b)(1) to dismiss the Consolidated Class Action Complaint ("Cons. Compl.") for lack of subject-matter jurisdiction because Plaintiffs lack Article III standing, and under Rule 12(b)(6) to dismiss each count for failure to state a claim upon which relief can be granted. In the alternative, Defendant moves under Rule 12(f) and Rule 23 to strike the nationwide class allegations. This Motion is supported by the following Memorandum of Points and Authorities.

## I. INTRODUCTION

This putative nationwide class action arises from a January 2026 ransomware incident ("Data Breach") in which an unauthorized third party allegedly accessed Defendant's IT network and exfiltrated data belonging to the customers of Defendant's corporate clients. Cons. Compl. ¶ 38. The three named Plaintiffs — residents of South Carolina and Tennessee who were customers of Defendant's clients, not of Defendant — allege that their names, Social Security numbers, and financial account information were compromised and leaked, but they do so only "upon information and belief," Cons. Compl. ¶ 40, and none alleges any fraudulent charge, unauthorized account, or instance of identity theft. The only harm alleged is an increase in spam calls, texts, and emails, Cons. Compl. ¶¶ 137, 149, 161. Their alleged injuries are a catalogue of speculation and purported mitigation efforts: an increased risk of future harm, lost time spent monitoring accounts, diminished value of their information, loss of the benefit of a bargain they never struck with Defendant, and an increase in spam. Cons. Compl. ¶ 224.

Those allegations fail at every stage of the Rule 12 inquiry. First, the Consolidated Complaint must be dismissed under Rule 12(b)(1): Plaintiffs plead no concrete injury in fact, cannot trace their only alleged misuse (i.e. an uptick in spam) to this breach, and cannot show that any injunction would redress data they say is already exposed. Second, each count fails under Rule

12(b)(6): the negligence claim pleads no cognizable damages and no recognized common-law duty; the negligence *per se* claim rests on the FTC Act, which creates no strict-liability standard; and the unjust-enrichment claim identifies no benefit unjustly retained. Third, and only in the alternative, the nationwide class allegations should be stricken because their claims would require applying the divergent laws of all fifty states — a defect no discovery can cure — and the class sweeps in countless uninjured members who lack standing after *TransUnion*.

## II. STATEMENT OF ALLEGED FACTS

Defendant is a transaction-advisory and diligence firm that provides services to corporate clients. Cons. Compl. ¶ 27. Plaintiffs are not Defendant's customers; each alleges that he or she was a customer of one of Defendant's clients and provided Private Information to that client, which in turn provided it to Defendant. Cons. Compl. ¶¶ 131–32, 143–44, 155–56. Plaintiffs Quincy York, Torin Roberts, and Dollie Graves reside in South Carolina and Tennessee; none resides in Illinois. Cons. Compl. ¶¶ 20–22.

In January 2026, an unauthorized third party allegedly accessed Defendant's network and exfiltrated data, and a ransomware group called "Genesis" claimed responsibility. Cons. Compl. ¶¶ 38–39. Plaintiffs allege "upon information and belief" that their names, Social Security numbers, and financial account information were among the data compromised and that the data was leaked. Cons. Compl. ¶¶ 40–41. No Plaintiff alleges any fraudulent charge, unauthorized account, or instance of identity theft; the only harm alleged is an increase in spam calls, texts, and emails. *See* Cons. Compl. ¶¶ 137, 149, 161.

The injuries Plaintiffs assert include an increased risk of future harm, lost time mitigating, diminished value of their information, loss of the benefit of the bargain, invasion of privacy, and an increase in spam. Cons. Compl. ¶ 224. Plaintiffs assert three claims on behalf of the putative class — negligence (Count I), negligence *per se* (Count II), and unjust enrichment (Count III),

Cons. Compl. ¶¶ 184–252 — and seek to represent a "Nationwide Class" of "[a]ll individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the Data Breach." Cons. Compl. ¶ 168.

## III. LEGAL STANDARD

A motion under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction, including Article III standing. A facial challenge asks whether the plaintiff has sufficiently alleged a basis for jurisdiction, taking the well-pleaded allegations as true. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). A factual challenge, by contrast, permits the court to look beyond the pleadings to the submitted evidence, at which point the presumption of correctness afforded the complaint's allegations "falls away." *Id.* at 444–45. Defendant brings a facial challenge here.

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court disregards "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and asks whether the remaining well-pleaded facts "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## IV. ARGUMENT

### A. Plaintiffs lack Article III standing, and the Consolidated Complaint must be dismissed under Rule 12(b)(1).

Article III confines the federal courts to actual cases and controversies: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). The "irreducible constitutional minimum" requires that a plaintiff "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Standing must be established "for each claim" and "for each form of relief." *TransUnion*, 594 U.S. at 431. As the party invoking federal jurisdiction, Plaintiffs bear that burden, *id.*, and their allegations fail at each element.

### 1. ***Plaintiffs fail to plead an injury in fact.***

The core of Plaintiffs' theory is that the Data Breach has exposed them to an increased risk of future identity theft. *See* Cons. Compl. ¶ 224. But *TransUnion* holds that in a suit for damages "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." 594 U.S. at 435–36. Such a risk supports only prospective, injunctive relief, not "retrospective damages." *Id.*

For damages, the plaintiff must show the risk "materialized" or that he was "independently harmed by their exposure to the risk itself." *Id.* at 437. The Seventh Circuit has applied that rule to data breach claims without qualification: "[t]o the extent that [a plaintiff] rests his claim for damages on allegations of future risk, the argument is a nonstarter," because "[a] plaintiff seeking money damages has standing to sue in federal court only for harms that have in fact materialized." *Dinerstein v. Google, LLC*, 73 F.4th 502, 515 (7th Cir. 2023). Although the pre-*TransUnion* decisions in *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694–95 (7th Cir. 2015) and *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016) remain authoritative, the Seventh Circuit has recognized that "*TransUnion* marked a shift in the Court's standing jurisprudence," and has limited those cases to their facts which are payment-card breaches where the hackers' purpose made the risk of fraud plausible. *Dinerstein*, 73 F.4th at 516.

Whether a data breach exposes consumers to a material threat of identity theft turns on "the sensitivity of the data in question" and on post-breach indicators such as "fraudulent charges" and "other symptoms of identity theft." *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 846 (N.D. Ill. 2020)(citation omitted). A plaintiff must allege that the data stolen was sufficiently sensitive to

expose the victims to a material risk of identity theft or fraudulent transactions. *Id.* This case is distinct from the authorities that have sustained standing. In *Remijas* and *Lewert*, the Seventh Circuit found an injury in fact precisely because payment-card data had been stolen *and* fraudulent charges had already appeared — misuse that had, in fact, materialized. *Remijas*, 794 F.3d at 690, 693; *Lewert*, 819 F.3d at 967. Similarly, in *In re Lurie Children's Hosp. Data Sec. Litig.*, the risk was "materialized" only for the plaintiffs who alleged that "unauthorized lines of credit or accounts ha[d] been taken out in their names." 2025 WL 2754760, at *6 (N.D. Ill. Sept. 27, 2025).

Here, although Plaintiffs allege that the compromised information was sensitive — "names, Social Security numbers, financial account information, and other sensitive information," Cons. Compl. ¶ 6 — they allege no fraudulent charge, unauthorized account, identity theft, or out-of-pocket loss; the only harm alleged is an increase in spam. *See* Cons. Compl. ¶¶ 137, 149, 161. Plaintiffs filed the Consolidated Complaint approximately four months after the Data Breach allegedly occurred in January 2026 (Cons. Compl. ¶ 39), yet still cannot point to a single instance of identity theft affecting the representative Plaintiffs. *See Kylie S.*, 475 F. Supp. 3d at 847 (dismissing where, "[m]ore than a year after the breach, Plaintiffs cannot point to a single instance of identity theft"). Their risk-based theory therefore cannot support standing for damages. *Dinerstein*, 73 F.4th at 515.

Plaintiffs' remaining injury theories fare no better. Each is either an abstract harm Article III does not recognize or an injury untethered to any misuse that has in fact occurred. An increase in spam calls, texts, and emails is not a concrete injury. On materially identical facts — theft of Social Security numbers alleged only "upon information and belief," and nothing more than "suspicious robocalls and spam texts" — the court dismissed for lack of standing, noting that "[c]ourts have generally rejected the theory that unsolicited calls or emails constitute an injury in

fact." *Kirkland v. Cunningham*, No. 25-CV-10730, 2026 WL 2906409, at *4 (N.D. Ill. Sept. 28, 2026) (quoting *Cooper v. Bonobos, Inc.*, No. 21-CV-854, 2022 WL 170622, at *5 (S.D.N.Y. Jan. 19, 2022)). And even if an uptick in spam could qualify, it cannot be laid at Defendant's door: as shown below, Plaintiffs never allege that their telephone numbers or email addresses were among the data taken. *See id.*

To the extent Plaintiffs rest on anxiety or distress, the Seventh Circuit has "held that worry and anxiety are not the kind of concrete injury essential to standing." *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 977 (7th Cir. 2023). *Kirkland* dismissed the identical theory where the plaintiffs alleged "anxiety, sleep disruption, stress, fear, and frustration," holding that "purely psychological harm" does not establish Article III standing. 2026 WL 2906409, at *3. Plaintiffs allege no emotional response that "led to actionable injury." *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 639 (7th Cir. 2023).

Further, the alleged diminution in the value of Plaintiffs' Private Information is "too speculative" to confer standing. *Kylie S.*, 475 F. Supp. 3d at 849. A plaintiff advancing that theory must plead a market for the specific data in which he actually participated; that is, that hackers tried to trade the data for value and that the plaintiff has sold, or would sell, his own information. *Id.* Plaintiffs plead neither. The theory also fails because an injury in fact "cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss"; Plaintiffs never allege that the Data Breach deprived them of the economic value of their information. *Dinerstein*, 73 F.4th at 518 (quoting *Silha v. ACT, Inc.*, 807 F.3d 169, 174–75 (7th Cir. 2015)).

The loss-of-the-benefit-of-the-bargain theory collapses on Plaintiffs' own pleading: they paid Defendant nothing. Plaintiffs were customers of Defendant's clients, not of Defendant, Cons. Compl. ¶¶ 131–32, 143–44, 155–56, and the theory "is not implicated" where plaintiffs "never

paid for [the defendant's] services." *Kylie S.*, 475 F. Supp. 3d at 846 n.3. The Seventh Circuit has declined to extend the overpayment theory beyond the product-liability context absent an allegation that the defendant charged a discrete fee for data security, *Dinerstein*, 73 F.4th at 516–17, and this District requires a "separate outlay for data security," because a consumer "did not pay for a side order of data security and protection." *Lurie*, 2025 WL 2754760, at *12 (quoting *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016)).

Any loss-of-confidentiality theory under *TransUnion*'s "disclosure of private information" analogue requires well-pleaded allegations that the plaintiff's own data was in fact disclosed or published. This Court thus rejected that injury where a plaintiff "simply theorizes that the hackers could put her data on the dark web" with "no facts suggesting that the hackers disseminated her data." *Bernardino v. HAH Grp. Holding, LLC*, No. 1:24-CV-7595, 2026 WL 1398722, at *5 (N.D. Ill. May 19, 2026). Here, Plaintiffs allege only "upon information and belief" that their information was compromised and leaked, Cons. Compl. ¶¶ 40–41, 51 — precisely the kind of "bare assertion[ ] of harm" "unsupported by any concrete details" that does "not suffice to allege a plausible, concrete injury." *Dinerstein*, 73 F.4th at 514.

Finally, lost time and money spent monitoring accounts are not injuries on these facts. Mitigation costs qualify only where the threatened harm is imminent, which turns on the sensitivity of the exposed data and whether it "facilitate[s] credit-related frauds." *Lurie*, 2025 WL 2754760, at *7; *Baysal*, 78 F.4th at 978. Because Plaintiffs plead the exposure of their sensitive information only "upon information and belief," Cons. Compl. ¶ 40, and identify no materialized misuse, they "cannot manufacture standing by incurring costs in anticipation of non-imminent harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013); *Lurie*, 2025 WL 2754760, at *7.

To the extent Plaintiffs seek injunctive relief based on future risk, that risk must be "certainly impending." *Dinerstein*, 73 F.4th at 516. Plaintiffs allege no facts showing that any identified actor intends to misuse their specific information; their theory rests on speculation about what unknown criminals might eventually do — not the imminent, substantial risk Article III requires for prospective relief. *Lurie*, 2025 WL 2754760, at *6.

**2. *__Plaintiffs fail to establish traceability.__***

Even if Plaintiffs had pleaded a concrete injury, they independently fail standing's second element. An injury must be "traceable to the asserted wrong and likely rather than speculative," and a plaintiff must show "a substantial likelihood" that the defendant's conduct caused the harm, not merely that "there might be a connection." *Baysal*, 78 F.4th at 978; *Pit Row, Inc. v. Costco Wholesale Corp.*, 101 F.4th 493, 502 (7th Cir. 2024). Where the causal chain is "attenuated," the injury is not fairly traceable to the defendant. *Pit Row*, 101 F.4th at 502.

The only harm Plaintiffs allege, which is the increase in "spam calls, text messages, and emails," Cons. Compl. ¶¶ 137, 149, 161, cannot be traced to this Data Breach. Nowhere do Plaintiffs allege that their telephone numbers or email addresses were among the data accessed; the information they claim was compromised is their "names, Social Security numbers, [and] financial account information." Cons. Compl. ¶ 40. A spam call therefore "does not stem from the asserted wrong," because the data taken is not the data needed to generate it. *Baysal*, 78 F.4th at 977–78. That is precisely why *Kirkland* held, on materially identical facts, that even assuming increased spam were an injury, the plaintiffs "failed to plausibly trace their alleged injury to [the] data breach" where they never even alleged their contact information was compromised. 2026 WL 2906409, at *4.

Plaintiffs' fallback theory that cybercriminals might "piece[ ] together" their information through "social engineering," (Cons. Compl. ¶¶ 111–14) only underscores the defect. Such a

theory "depends on a 'long sequence of uncertain contingencies involving multiple independent actors'" and a "highly attenuated chain of possibilities" that "does not satisfy [Article III]." *Kylie S.*, 475 F. Supp. 3d at 847 (quoting *Clapper*, 568 U.S. at 410, and *Attias v. CareFirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017)).

Plaintiffs' own allegations compound the problem. They plead the "prevalence of ransomware attacks" and the "prevalence of public announcements of data breach." Cons. Compl. ¶¶ 59–60. Because their information may have been exposed in any number of other incidents, they cannot establish that the spam they report is "traceable to the asserted wrong" here rather than to "some other source." *Baysal*, 78 F.4th at 977–78. An allegation pleaded only "upon information and belief," Cons. Compl. ¶ 40, that "boils down to an assertion that there might be a connection" is "[g]uesswork" that "is not enough" for standing. *Id.* at 978.

Because Plaintiffs cannot connect any cognizable injury to this Data Breach as distinct from the broader ecosystem of breaches they themselves describe, they fail to plead traceability.

**3. *Plaintiffs fail to establish redressability.***

The redressability defect follows from the first two elements. A plaintiff must establish standing "for each form of relief" sought, *TransUnion*, 594 U.S. at 431, and "plaintiffs who lack standing cannot receive either damages or an injunction," *Baysal*, 78 F.4th at 979. Plaintiffs' damages claim fails for the reasons already given: where no concrete harm has materialized, a damages award would have nothing to redress.

Nor can Plaintiffs' request for injunctive relief satisfy redressability. By Plaintiffs' own allegations, the Data Breach has already occurred and their data is purportedly already on the dark web. *See* Cons. Compl. ¶¶ 7–8, 41, 51. A court order requiring Defendant to improve its data-security practices "cannot change that fact" and "will not redress those injuries," for it is "a bell that cannot be unrung." *Giasson v. MRA-The Mgmt. Ass'n, Inc.*, 777 F. Supp. 3d 913, 926–27

(E.D. Wis. 2025). Such relief would guard only against a future, hypothetical breach, and Plaintiffs have not shown that "another breach of Defendant's network" is "certainly impending." *Id.* at 926; *Dinerstein*, 73 F.4th at 512 ("while an imminent risk of future harm may suffice to support standing to sue for *prospective* relief (i.e., an injunction), a claim for damages requires a concrete harm that has in fact occurred.").

**B. Each count of the Cons. Compl. fails to state a claim under Rule 12(b)(6).**

**1. *<u>Count I (negligence) fails for want of cognizable damages.</u>***

To state a negligence claim under Illinois law, Plaintiffs must allege (1) that Defendant owed them a duty of care, (2) that Defendant breached that duty, and (3) that the breach was the proximate cause of their injuries. *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-CV-2097, 2021 WL 4301476, at *6 (C.D. Ill. Sept. 21, 2021).

(a) **There is no common-law duty for Defendant to safeguard personal information.**

Although courts are split, the Illinois Supreme Court has never recognized a freestanding common-law duty to safeguard personal information. *See McGlenn*, 2021 WL 4301476, at *6. The Seventh Circuit in *Cmty. Bank of Trenton v. Schnuck Markets, Inc.* ruled that the defendant did *not* owe a duty to the customer's banks under Illinois law when the defendant experienced a data breach incident, and "predict[ed] that the state court would not impose the common law data security duty" plaintiffs sought. 887 F.3d 803, 816 (7th Cir. 2018). RedRidge acknowledges that the Illinois legislature amended Illinois Personal Information Protection Act ("PIPA") in 2017, and the PIPA now requires data collectors to "implement and maintain reasonable security measures to protect" stored records. 815 ILCS § 530/45(a); *McGlenn*, 2021 WL 4301476, at *11. However, the duty of a "data collector" under this provision "is expressly limited to Illinois

residents." *McGlenn*, 2021 WL 4301476, at *7; 815 ILCS § 530/45(a). Here, none of the named Plaintiffs is an Illinois resident. *See* Cons. Compl. ¶¶ 20–22.

(b) **Plaintiffs fail to plead proximate cause.**

Even assuming Plaintiffs adequately allege duty and breach, Count I fails for requirement of proximate cause, which in Illinois has two components: legal cause and cause in fact. *McGlenn*, 2021 WL 4301476, at *9. Cause in fact turns on whether the injury would not have occurred absent the defendant's conduct. *Lurie*, 2025 WL 2754760, at *10. The legal cause turns on "foreseeability": "whether the injury is of a type that a reasonable person would see ***as a likely result*** of his or her conduct." *Id.* (citation omitted). Although proximate cause is ordinarily a question of fact, it may "be decided as a matter of law if the facts alleged demonstrate that a party would never be entitled to recover." *Id.* This is such a case.

Here, the only post-breach consequence any named Plaintiff alleges is an increase in spam. Cons. Compl. ¶¶ 137, 149, 161. That is not a foreseeable, "likely result" of the exfiltration of Social Security and financial-account information, particularly where Plaintiffs never allege that their telephone numbers or email addresses were among the data taken. Plaintiffs' own pleadings concede that data breaches are increasingly common, *see* Cons. Compl. ¶¶ 59–60, and, as *McGlenn* observed, "at least the Equifax data breach would have exposed all the information that was needed to commit these incidents." 2021 WL 4301476, at *10. On these allegations, the connection between Defendant's alleged conduct and the increased spam is too attenuated and speculative to constitute legal cause.

(c) **Independently, Plaintiffs plead no cognizable injury.**

Critically, "an increased risk of future harm is an element of damages . . . [it] is *not* the injury itself," and absent a manifested injury a plaintiff may not recover. *Olson v. Ferrara Candy Co.*, 2025 IL App (1st) 241126, ¶¶ 41–42 (emphases in original). "[A]ny unrealized harm from the

data breach, including the increased risk of identity theft, cannot support Plaintiff's claims sounding in negligence." *M.C. v. E. Side Health Dist.*, No. 3:24-CV-01336-NJR, 2025 WL 435992, at *3 (S.D. Ill. Feb. 7, 2025); *see also Berry v. City of Chicago*, 181 N.E.3d 679, 688 (Ill. 2020).

Moreover, Illinois courts have rejected both the diminution-in-value and benefit-of-the-bargain damages theories. *See M.C.*, 2025 WL 435992, at *3–4. Personal information is not "property," and there is no "nonspeculative way to assess the diminution in value of the property right." *M.C.*, 2025 WL 435992, at *3 (citation omitted).

*Olson* confirms the requirement of manifested injury: the court found that the plaintiffs there sufficiently stated a claim because identity theft or fraud had *actually* occurred, on top of lost time and increased risk. 2025 IL App (1st) 241126, ¶¶ 29, 42. Here, no Plaintiff alleges any actual identity theft or fraud; only increased spam is alleged as misuse after the Data Breach. *See* Cons. Compl. ¶¶ 137, 149, 161. Count I therefore fails to plead a cognizable injury.

### 2. ***<u>Count II (negligence per se) fails because the FTC Act supplies no standard of strict liability.</u>***

Count II rests on Section 5 of the FTC Act, 15 U.S.C. § 45. Cons. Compl. ¶ 229. But a statutory violation constitutes negligence *per se* only where the legislature "clearly intend[ed]" to impose strict liability, and there is "no support for the notion that the legislature clearly intended to impose strict liability for FTC Act violations." *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 28; *see also M.C.*, 2025 WL 435992, at *6. An alleged FTC Act violation is, at most, *prima facie* evidence of negligence, not negligence *per se*. *Id.* Therefore, Count II should also be dismissed.

### 3. ***<u>Economic loss doctrine bars recovery of any tort damages.</u>***

As a further and independent ground, to the extent the negligence and negligence *per se* claims seek recovery for purely economic losses, Illinois's economic-loss (*Moorman*) doctrine

bars them. *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761 (C.D. Ill. 2020); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443, 453 (1982). The Seventh Circuit, predicting Illinois law, applied the doctrine to bar a data-security negligence claim where the losses were purely economic and no exception applied, *Cmty. Bank of Trenton*, 887 F.3d at 816–17. The Seventh Circuit specifically "noted that lost time and an inability to use or access funds due to a data breach are economic losses." *Perdue*, 455 F. Supp. 3d at 761 (dismissing the Illinois plaintiffs' negligence *per se* claims under the economic-loss doctrine).

Here, the damages Plaintiffs allege, including lost time, are purely economic; there is no physical injury or property damage. *See In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011) (economic-loss doctrine bars data-breach tort claims absent personal injury or property damage). Regardless, Counts I and II independently fail for Plaintiffs' inability to establish proximate cause and cognizable damages as shown above. Defendant preserves the *Moorman* bar as an independent, alternative ground for dismissing Counts I and II.

**4. *Count III (unjust enrichment) fails because Defendant retained no benefit unjustly.***

Unjust enrichment requires that the defendant "unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Perdue*, 455 F. Supp. 3d at 766. *Perdue* dismissed such a claim where the plaintiffs did not allege that "any specific portion of their payments went toward data protection." *Id.* And Illinois courts hold that a defendant's incidental receipt of personal information "as an administrative necessity" is not a benefit unjustly retained. *Flores*, 2023 IL App (1st) 230140, ¶ 38. Here, Plaintiffs made no payment to Defendant at all; they were customers of Defendant's clients. Cons. Compl. ¶¶ 131, 143, 155. Accordingly, Plaintiffs identify no portion of any payment directed to data security, alleging only that "Defendant received the benefit of

Plaintiffs' Private Information to provide services." Cons. Compl. ¶¶ 239–240. The claim also fails to the extent it depends on an alleged contractual relationship: a third-party-beneficiary or contract theory requires a contract that clearly and directly intends to benefit the plaintiff, against a strong presumption that parties contract only for themselves. *Cmty. Bank of Trenton*, 887 F.3d at 819–21. Count III should be dismissed.

### C. In the alternative, the nationwide class allegations should be stricken under Rule 12(f) and Rule 23.

Should any claim survive, the Court should strike the nationwide class allegations. Rule 23 mandates any class to satisfy numerosity, commonality, typicality, and adequacy requirements. Fed. R. Civ. P. 23. The interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to strike class allegations at the pleading stage where the pleadings are "facially defective or inherently deficient" and "no amount of discovery or time could provide support for class status." *Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555, 568–69 (N.D. Ill. 2021).

First, the nationwide class cannot satisfy Rule 23(b)(3). No named Plaintiff resides in Illinois, and the putative class spans residents of every state. Cons. Compl. ¶¶ 20–22, 168. Under Illinois's most-significant-relationship rules, each class member's claim is governed by the law of his or her home state, and where claims "must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable," defeating predominance and superiority. *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 584–86 (N.D. Ill. 2008); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules."). Because that defect "stem[s] from the variance in the substantive law, which discovery cannot cure," it can be properly resolved now. *Fullerton v. Corelle Brands, LLC*, No. 18-CV-4152, 2019 WL 4750039, at *15 (N.D. Ill. Sept. 30, 2019) (striking nationwide unjust-enrichment and common-law class allegations at the pleading stage).

Second, Plaintiffs' alternative certification vehicles fail on the face of the pleadings. Plaintiffs invoke Rule 23(b)(2), Cons. Compl. ¶¶ 167, 171, yet seek individualized monetary relief, Cons. Compl. ¶ 224, and Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011). A data-security injunction that "would merely lay an evidentiary foundation for subsequent determinations of liability" is not the "final" relief Rule 23(b)(2) demands. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 886–87, 893 (7th Cir. 2011). Rule 23(c)(4) fares no better: "[a] district court cannot manufacture predominance through the nimble use of subdivision (c)(4)," and it cannot rescue a class whose claims require applying the law of numerous states. *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 314 (S.D. Ill. 2007).

Third, the class is defined so broadly that it sweeps in numerous uninjured members. After *TransUnion*, "[e]very class member must have Article III standing in order to recover individual damages," *TransUnion*, 594 U.S. at 431, yet a class of everyone whose data was merely "accessed" includes many who suffered no misuse and thus "could not have been harmed," rendering it "defined too broadly to permit certification." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824–25 (7th Cir. 2012).

Accordingly, this Court should strike the nationwide class allegations.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the Consolidated Class Action Complaint in its entirety under Rule 12(b)(1) and Rule 12(b)(6) and, in the alternative, strike the nationwide class allegations under Rule 12(f) and Rule 23, and grant such further relief as is just and proper.

Respectfully submitted,

Date: October 30, 2026

**WOOD, SMITH, HENNING & BERMAN LLP**

By: */s/ Jonathan J. Ibarra*
Jonathan J. Ibarra, IL Bar No. 6309298
jibarra@wshblaw.com
222 S. Riverside Plaza, Suite 640
Chicago, IL 60606
Tel: 312.766.4447
**Attorneys for Defendant,**
**REDRIDGE DILIGENCE SERVICES, LLC**
**d/b/a IMA DILIGENCE SERVICES**

Date: October 30, 2026

**WOOD, SMITH, HENNING & BERMAN LLP**

By: ____________________
Christopher J. Seusing
[Pro Hac Vice Forthcoming]
cseusing@wshblaw.com
33 Riverside Avenue, Suite 501
Westport, Connecticut 06880
Tel: 475.755.7040
**Attorneys for Defendant,**
**REDRIDGE DILIGENCE SERVICES, LLC**
**d/b/a IMA DILIGENCE SERVICES**

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2026, I electronically filed the foregoing **DEFENDANT REDRIDGE DILIGENCE SERVICES, LLC d/b/a IMA DILIGENCE SERVICES' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); OR, IN THE ALTERNATIVE, MOTION TO STRIKE THE CLASS ALLEGATIONS PURSUANT TO FED. R. CIV. P. 12(f) AND 23; AND MEMORANDUM IN SUPPORT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gary M. Klinger, Esq.
(IL Bar No. 6303726)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel : (866) 252-0878
gklinger@milberg.com
Leanna Loginov, Esq.
**SHAMIS & GENTILE P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Jeff Ostrow, Esq.
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
ostrow@kolawyers.com

**Interim Class Counsel for Plaintiffs**
**and the Putative Class**

*/s/ Jonathan J. Ibarra*
Jonathan J. Ibarra